**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| JOHN POST, Individually and On Behalf of All Others Similarly Situated, )<br>)<br>Plaintiff,    )<br>)<br>   v.        )<br>)<br>CHINA XD PLASTICS COMPANY )<br>LIMITED, JIE HAN, TAYLOR ZHANG, )<br>LINYUAN ZHAI, HUIYI CHEN, )<br>GUANBAO HUANG, FAITH DAWN )<br>LIMITED, FAITH HORIZON INC., FAITH )<br>ABUNDANT LIMITED, and XD )<br>ENGINEERING PLASTICS COMPANY )<br>LIMITED, )<br>)<br>Defendants.    ) | Case No. _____<br><br>JURY TRIAL DEMANDED<br><br>CLASS ACTION |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This action stems from a proposed transaction announced on June 15, 2020 (the "Proposed Transaction"), pursuant to which China XD Plastics Company Limited ("China XD" or the "Company") will be taken private by Jie Han ("Han"), the Company's Chief Executive Officer ("CEO") and Chairman of the Board of Directors (the "Board" or "Individual Defendants"), and his affiliates.

2. On June 15, 2020, China XD's Board caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Faith Dawn Limited ("Parent") and Faith Horizon Inc. ("Merger Sub").

3. Parent is currently wholly owned by Faith Abundant Limited ("Holdco," and together with Han, Parent, Merger Sub, and XD Engineering Plastics Company Limited ("Chairman SPV"), the "Buyer Group"), and, at the effective time of the Proposed Transaction, will be beneficially owned by Han.

4. The Buyer Group currently owns 33,065,054 shares of China XD common stock, representing approximately 69.6% of the voting power and approximately 50.1% of the share capital of the Company (the "Rollover Shares").

5. Pursuant to the terms of the Merger Agreement, China XD's minority stockholders will receive $1.20 in cash for each share of China XD common stock they own. On the other hand, the Rollover Shares will be contributed to Parent in exchange for shares of its ordinary shares.

6. On June 22, 2020, defendants filed a proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission (the "SEC") in connection with the Proposed Transaction.

7. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

**JURISDICTION AND VENUE**

8. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

9. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an

individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

10. Venue is proper under 28 U.S.C. § 1391(b) because a portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

11. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of China XD common stock.

12. Defendant China XD is a Nevada corporation and a party to the Merger Agreement. China XD's common stock is traded on the NASDAQ Global Market under the ticker symbol "CXDC."

13. Defendant Han is CEO and Chairman of the Board of the Company. Han founded Harbin Xinda, the Company's wholly-owned subsidiary, in 2004, and has been employed by Harbin Xinda and then Xinda Group since that time. In January 2008, Han was appointed Chairman and CEO of Harbin Xinda. Han, together with the rest of the Buyer Group, owns 33,065,054 shares of China XD common stock, representing approximately 69.6% of the voting power and approximately 50.1% of the share capital of the Company.

14. Defendant Taylor Zhang ("Zhang") is Chief Financial Officer and a director of the Company.

15. Defendant Linyuan Zhai ("Zhai") is a director of the Company. Zhai is a member of the so-called special committee of the Board (the "Special Committee").

16. Defendant Huiyi Chen ("Chen") is a director of the Company. Chen is a member of the Special Committee.

17. Defendant Guanbao Huang ("Huang") is a director of the Company. Huang is a member of the Special Committee.

18. The defendants identified in paragraphs 13 through 17 are collectively referred to herein as the "Individual Defendants."

19. Defendant Parent is an exempted company incorporated under the laws of the Cayman Islands and a party to the Merger Agreement. Parent is wholly owned by Holdco.

20. Defendant Merger Sub is a Nevada corporation, a wholly-owned subsidiary of Parent, and a party to the Merger Agreement.

21. Defendant Holdco is an exempted company incorporated under the laws of the Cayman Islands. Holdco is wholly owned by Han.

22. Defendant Chairman SPV is a business company incorporated under the laws of British Virgin Islands. Chairman SPV is wholly owned by Han.

## CLASS ACTION ALLEGATIONS

23. Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of China XD (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

24. This action is properly maintainable as a class action.

25. The Class is so numerous that joinder of all members is impracticable. As of June 15, 2020, there were approximately 33,883,787 unaffiliated shares of China XD common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

26. Questions of law and fact are common to the Class, including, among others, whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

27. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

28. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

29. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

*Background of the Company and the Proposed Transaction*

30. China XD, through its wholly-owned subsidiaries, develops, manufactures, and sells polymer composites materials primarily for automotive applications.

31. The Company's products are used in the exterior and interior trim and in the functional components of thirty-one automobile brands manufactured in China, including Audi, Mercedes Benz, BMW, Toyota, Buick, Chevrolet, Mazda, Volvo, Ford, Citroen, Jinbei, and

Volkswagen.

32.     On June 15, 2020, China XD's Board caused the Company to enter into the Merger Agreement.

33.     The Buyer Group currently owns 33,065,054 shares of China XD common stock, representing approximately 69.6% of the voting power and approximately 50.1% of the share capital of the Company.

34.     Pursuant to the terms of the Merger Agreement, China XD's minority stockholders will receive $1.20 in cash for each share of China XD common stock they own.

35.     On the other hand, the Rollover Shares will be contributed to Parent in exchange for shares of its ordinary shares.

36.     According to the press release announcing the Proposed Transaction:

China XD Plastics Company Limited (NASDAQ: CXDC) (the "Company"), one of China's leading specialty chemical companies engaged in the development, manufacture and sale of polymer composite materials primarily for automotive applications, today announced that it has entered into a definitive Agreement and Plan of Merger (the "Merger Agreement") with Faith Dawn Limited ("Parent") and Faith Horizon Inc. ("Merger Sub"), a Nevada corporation and a wholly-owned subsidiary of Parent.

Parent is ultimately wholly-owned by Mr. Jie Han (the "Chairman"), the chairman of board of directors and chief executive officer of the Company. The Chairman and XD. Engineering Plastics Company Limited, an entity wholly-owned by the Chairman (the "Chairman SPV", collectively with the Chairman, the "Rollover Stockholders") currently beneficially own 33,065,054 shares of common stock, par value $0.0001 per share, of the Company (the "Common Shares") and 1,000,000 shares of series B preferred stock, par value $0.0001 per share, of the Company (the "Preferred Shares"), representing approximately 70% of the voting power and approximately 50.1% of the share capital of the Company. Parent, Merger Sub and the Rollover Stockholders are collectively referred to as the "Buyer Group".

Pursuant to the Merger Agreement, Parent will acquire all of the outstanding Common Shares of the Company for a cash consideration equal to US$1.2 per share (the "Merger Consideration"). This amount represents a premium of 25% over the Company's closing price of US$0.96 per share as quoted by NASDAQ Global Market (the "NASDAQ") on May 7, 2020, the last trading day prior to the date that

the Company received a non-binding "going private" proposal from members of the Buyer Group. The Merger Consideration also represents an increase of approximately 9.1% over the US$1.1 per share initially offered by the Buyer Group in their initial "going-private" proposal on May 7, 2020 and a premium of approximately 15.4% over the Company's closing price of US$1.04 per share on June 12 , 2020, the last trading day prior to this press release.

Subject to the terms and conditions of the Merger Agreement, at the effective time of the merger, Merger Sub will merge with and into the Company, with the Company continuing as the surviving corporation and a wholly-owned subsidiary of Parent (the "Merger"), and each of the Common Shares issued and outstanding immediately prior to the effective time of the Merger will be cancelled and cease to exist in exchange for the right to receive the Merger Consideration of US$1.2 per share in cash, without interest and net of any applicable withholding tax, except for (i) Common Shares and Preferred Shares held by any of Parent, Merger Sub, the Rollover Stockholders and any of their respective affiliates; (ii) Common Shares held by the Company or any its wholly owned subsidiary (or held in the Company's treasury), and (iii) Common Shares reserved (but not yet allocated) for issuance, settlement and allocation upon exercise or vesting of the Company share awards. Pursuant to Nevada Revised Statutes 92A.390(1), there are no rights of dissent available to the holders of Common Shares in connection with the Merger.

The Company's board of directors, acting on the recommendation of a special committee of independent and disinterested directors (the "Special Committee"), unanimously approved the Merger Agreement and the transactions contemplated by the Merger Agreement, including the Merger, and resolved to recommend that the Company's stockholders vote to authorize and approve the Merger Agreement and the transactions contemplated by the Merger Agreement, including the Merger. The Special Committee, which is composed solely of independent directors of the Company who are unaffiliated with any member of the Buyer Group or management of the Company, exclusively negotiated the terms of the Merger Agreement with the Buyer Group with the assistance of its independent financial and legal advisors.

The Merger, which is currently expected to close during the third quarter of 2020, is subject to various closing conditions, including the adoption of the Merger Agreement by the Company's stockholders. Pursuant to the Merger Agreement, adoption of the Merger Agreement and the transactions contemplated by the Merger Agreement, including the Merger, by the Company's stockholders requires (i) the affirmative vote (in person or by proxy) of the holders of at least a majority of the voting power of the outstanding Common Shares and Preferred Shares, voting together as a single class, with the holders of Preferred Shares being entitled to an aggregate of 40% of the combined voting power of the entire share capital of the Company, and (ii) the affirmative vote (in person or by proxy) or consent of the holders of at least a majority of the outstanding Preferred Shares, voting as a single class. The Company will call a meeting of stockholders for the purpose of voting

on the adoption of the Merger Agreement and the transactions contemplated by the Merger Agreement as soon as practicable. If completed, the Merger will, under laws of the State of Nevada, result in the Company becoming a privately-held company and the Common Shares of the Company would no longer be listed on the NASDAQ.

Hogan Lovells is serving as U.S. legal counsel to the Special Committee, Duff & Phelps, LLC is serving as the financial advisor to the Special Committee. Wilson Sonsini Goodrich & Rosati, Professional Corporation is serving as U.S. legal counsel to the Company.

O'Melveny & Myers LLP is serving as legal advisor to the Buyer Group.

***The Proxy Statement Omits Material Information, Rendering It False and Misleading***

37. Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

38. As set forth below, the Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.

39. The Proxy Statement omits material information regarding the process leading up to the execution of the Merger Agreement.

40. The Proxy Statement provides that:

On February 16, 2017, the Chairman, the Chairman SPV and MSPEA Modified Plastics Holding Limited, an affiliate of Morgan Stanley Private Equity Asia III, Inc., formed a consortium and submitted a preliminary, non-binding letter to the Board, proposing to acquire all of the Common Shares of the Company not already owned by the consortium at US$5.21 per share in cash in a take-private transaction. On October 14, 2019, MSPEA Modified Plastics Holding Limited withdrew from the consortium and informed the Board that it no longer intended to participate in the proposed transaction.

However, the Proxy Statement fails to disclose what steps the Company's officers and directors took regarding the proposal between February 16, 2017 and October 14, 2019. The Proxy Statement further fails to disclose MSPEA Modified Plastics Holding Limited's reasons for withdrawing from the consortium and no longer pursuing the proposed transaction.

41. The Proxy Statement fails to disclose any details with respect to the "market check exercise" performed by Duff & Phelps Securities, LLC ("DPS") in 2017.

42. The Proxy Statement fails to disclose the amount of compensation DPS and/or its affiliates received pursuant to its engagement letter dated June 2, 2017.

43. The Proxy Statement fails to disclose the strategic alternatives "seriously considered" by Han in April and May 2020.

44. The Proxy Statement fails to disclose the nature and details of the "emails sent from a number of individual stockholders who are minority stockholders of the Company, claiming that the offer price of $1.1 is too low," and whether the Company received similar emails in connection with the $1.20 merger consideration.

45. The Proxy Statement fails to disclose the amount of the counterproposal submitted by the Special Committee's representatives to the Buyer Group on June 4, 2020.

46. The Proxy Statement fails to disclose the Individual Defendants' basis for approving the Proposed Transaction being funded primarily by available cash of the Company and its subsidiaries.

47. The Company's stockholders are entitled to an accurate description of the process leading up to the Proposed Transaction.

48. The omission of the above-referenced material information renders the Proxy Statement false and misleading.

49. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

### Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and China XD

50. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

51. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. China XD is liable as the issuer of these statements.

52. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

53. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

54. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

55. The Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

56. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

57. Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants and the Buyer Group

58. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

59. The Individual Defendants and the Buyer Group acted as controlling persons of China XD within the meaning of Section 20(a) of the 1934 Act as alleged herein.  By virtue of their positions as officers and/or directors of China XD and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

60. Each of the Individual Defendants and the Buyer Group was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

61. Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in the making of the Proxy Statement.

62. By virtue of the foregoing, the Individual Defendants and the Buyer Group violated Section 20(a) of the 1934 Act.

63. As set forth above, the Individual Defendants and the Buyer Group had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: July 8, 2020                                             **RIGRODSKY & LONG, P.A.**

                                                                                By:  /s/ *Gina M. Serra*
                                                                                Brian D. Long (#4347)
**OF COUNSEL:**                                             Gina M. Serra (#5387)
                                                                                300 Delaware Avenue, Suite 1220
**RM LAW, P.C.**                                            Wilmington, DE 19801
Richard A. Maniskas                                        Telephone: (302) 295-5310
1055 Westlakes Drive, Suite 300                     Facsimile: (302) 654-7530
Berwyn, PA 19312                                             Email: bdl@rl-legal.com
Telephone: (484) 324-6800                            Email: gms@rl-legal.com
Facsimile: (484) 631-1305
Email: rm@maniskas.com                               *Attorneys for Plaintiff*